TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00010-CR






Russell Paul Newman, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT


NO. 50,104, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING







 A jury found appellant Russell Paul Newman guilty of aggravated sexual assault
and assessed punishment at imprisonment for forty-five years. See Tex. Penal Code Ann.
§ 22.021(1)(B) (West 1994). In his only point of error, Newman asserts that the trial court erred
in admitting into evidence written statements that he made to police without being warned of his
rights. We will overrule this point of error and affirm the trial court's judgment.


FACTUAL BACKGROUND

 Russell Paul Newman lived in the trailer home of James and Shontaye Jones in the
summer months of 1999. During that time, the Joneses often looked after J.E., a nine-year-old
girl, and her two younger siblings. The children occasionally stayed with the Joneses overnight,
and one overnight stay in August led to the aggravated sexual assault involved in this case.

 On August 2, 1999, James Jones was on his way to work at 4:30 a.m. when he
heard J.E. cry, "Stop, get off me. You're hurting me," from the bedroom where Newman was
staying. Jones opened the bedroom door to find both Newman and J.E. covered up in bed. When
Jones asked what was going on, Newman responded that he had just popped the girl on the hand.

 Jones testified at trial that although he went on to work that day, he became
increasingly troubled by what he had seen and heard that morning. When Jones arrived home later
that afternoon and asked J.E. about the morning incident, she told him that Newman "stuck his
thing in my butt." The Joneses immediately contacted the police and took J.E. to an area hospital
for examination. The nurse who saw J.E. that day testified at trial that the girl had suffered
trauma to the anal area.

 In the meantime, the detective assigned to J.E.'s case contacted Newman and
suggested that he come to the police department. Newman came to the station that evening around
7:45 p.m., but the detective who had called him was at the hospital with J.E. Newman spoke
instead with Detective Hall, who informed Newman that he was a suspect in the sexual assault,
but that he was not under arrest and could leave at any time. Newman does not dispute that
Detective Hall informed him that he was only a suspect and that he was free to leave when he
wished.

 Within minutes of his arrival, Newman told Detective Hall that he awoke during
the middle of the previous night to the sound of J.E.'s voice and found himself touching her anus
with his penis. He explained that he did not understand what was going on at the time and
immediately got up to put on some shorts. Detective Hall asked him if he wished to put his story
in writing; Newman wrote and signed a brief statement reflecting his oral admissions. Detective
Hall then authored a second statement which Newman signed as well. Detective Hall did not
advise Newman of his Miranda rights at any time during their conversation. The entire
interrogation lasted less than three-quarters of an hour, and Newman left the station in his own
vehicle around 8:30 p.m. He was arrested later that night for an outstanding traffic warrant.


DISCUSSION

 At trial, Newman moved to suppress the written statements obtained by the police
on grounds that he was never given his Miranda warnings before he made the statements. The
trial court overruled this motion, and Newman now challenges the court's implicit finding that he
was not "in custody" during the interview with police and thus was not entitled to the protections
of Miranda, embodied in article 38.22 of the Texas Code of Criminal Procedure. See Tex. Code
Crim. Proc. Ann. art. 38.22, § 2 (West 1979).(1)

 This case presents a mixed question of law and fact. In making its decision, the
trial court had to consider whether Newman was in custody and had to decide his legal right to
Miranda warnings based on that finding. Under the standard of review articulated in Guzman v.
State, 955 S.W.2d 85 (Tex. Crim. App. 1997), we defer to the trial court's decision if the
resolution of the mixed question turns on an evaluation of credibility and demeanor, but we review
the court's decision de novo if the mixed question of law and fact does not turn on credibility
issues. See id. at 89; Maestas v. State, 987 S.W.2d 59, 62 (Tex. Crim. App. 1999), cert. denied,
Maestas v. Texas, 120 S. Ct. 93 (1999). Because the interviewing detective's account of the
events surrounding his interview with Newman is uncontroverted, the resolution of Newman's
right to Miranda warnings does not involve an evaluation of credibility. Thus, we review the trial
court's decision de novo. See Maestas, 987 S.W.2d at 62 n.8 (explaining that uncontested factual
contentions do not engage the trial court in a balancing act of credibility and are thus justifiably
reviewed de novo).

 We determine first whether Newman was in custody because Miranda and article
38.22 apply only to statements made as a result of custodial interrogation. See Rodriguez v. State,
939 S.W.2d 211, 215 (Tex. App.--Austin 1997, no pet.). "A person is in 'custody' only if, under
the circumstances, a reasonable person would believe that his freedom of movement was restrained
to the degree associated with a formal arrest." Dowthitt v. State, 931 S.W.2d 244, 254 (Tex.
Crim. App. 1996) (citing Stansbury v. California, 511 U.S. 318, 322 (1994)). The reasonable
person test demands that the custody determination be based entirely upon objective circumstances. 
Dowthitt, 931 S.W.2d at 254.

 The Court of Criminal Appeals has identified at least four general situations that
may constitute custody: (1) when the suspect is physically deprived of his freedom of movement
in any significant way, (2) when the suspect is told by a law enforcement officer that he cannot
leave, (3) when law enforcement officers create a situation that would lead a reasonable person
to believe that his freedom of movement has been significantly restricted, and (4) when probable
cause to arrest exists and law enforcement officers do not tell the suspect that he is free to leave. 
Id. at 255. For the first three situations, the suspect's freedom of movement must be restricted
to the degree associated with an arrest, as opposed to an investigative detention. Id. Stationhouse
questioning is not, in and of itself, a custodial interrogation. Id. As for the fourth scenario,
custody is established only if the officer's knowledge of probable cause is manifested to the
suspect, and that manifestation, combined with the other objective circumstances, would lead a
reasonable person in the suspect's position to believe that he is under restraint to the degree
associated with an arrest. Id.

 In the instant case, Newman was not in custody at the time that he gave his oral and
written statements to the police. He came to the police station voluntarily. Detective Hall then
informed Newman that he was a suspect in the sexual assault of J.E., but this investigative focus
did not elevate the consensual inquiry to the level of a custodial interrogation as appellant suggests. 
"Even a clear statement by an officer that the person under interrogation is the prime suspect is
not in itself dispositive of the custody issue, for some suspects are free to come and go until the
police decide to make an arrest." Rodriguez, 939 S.W.2d at 216 (citing Stansbury, 511 U.S. at
325). There is no evidence in the record and Newman does not now contend that his freedom to
leave was hindered in any way during the interview. In fact, Newman left the station on his own
accord less than an hour after his initial arrival. A reasonable person in these circumstances would
not have thought that his freedom to leave was suspended to the degree associated with formal
arrest. See Oregon v. Mathiason, 429 U.S. 492, 493-95 (1977) (holding an interview with police
behind closed doors as noncustodial since appellant was allowed to come and go voluntarily);
Meek v. State, 790 S.W.2d 618, 621-22 (Tex. Crim. App. 1990) (finding that fact that appellant
came to authorities of his own free will and was allowed to leave unhindered outweighed fact that
he was focus of criminal investigation).

 Newman argues, however, that the fact that an interrogation begins as noncustodial
does not prevent it from later becoming custodial. See Dowthitt, 931 S.W.2d at 255. According
to the Court of Criminal Appeals in Dowthitt, a noncustodial interrogation may become custodial
once a suspect makes an incriminating admission to the police. Id. at 256-57. Under this rationale,
Newman argues that the interview became custodial immediately after he made the initial oral
admissions to Detective Hall, and thus his written statements were inadmissible under article
38.22, section 2. Newman fails to note, however, that the court in Dowthitt did not base its
finding of custody upon the development of a pivotal admission alone. See id. Instead, the court
merely added this fact to the other objective circumstances under consideration in that case,
including the fifteen-hour duration of the interrogation and the fact that the suspect was
accompanied by police on bathroom breaks throughout the interview. Id. None of these other
factors tending to show restraint of freedom of movement were present during Newman's
interrogation; consequently, we cannot say that the trial court erred in its application of the law
to the objective facts present in this case.

 Even if it was error for the trial court to admit Newman's written statements into
evidence, any such error would be harmless beyond a reasonable doubt. See Tex. R. App. P.
44.2(a); Dowthitt, 931 S.W.2d at 263. Although we recognize that a suspect's admissions to
police often weigh heavily in the minds of jurors, this is an unusual case because the defendant's
statements were only a small part of the overwhelmingly consistent testimony and evidence offered
to prove his guilt. Multiple witnesses, including the victim, testified at trial about the events
surrounding the assault, and Newman did not offer any controverting theory of defense to rebut
their testimonies.

 James Jones testified that he heard J.E. screaming from Newman's room in the
early hours of the morning, and that when he opened the door, he could see that J.E. and Newman
were in the bed together. Shontaye Jones testified that when she attempted to wake and dress the
three children later that morning, J.E. was not in the room where she and her siblings had been
put to bed the night before. Shontaye searched the trailer and found J.E. in bed with Newman. 
She then witnessed J.E. leave the bedroom in one of Newman's t-shirts even though she had put
J.E. to sleep in her flowered jumper. Both of the Joneses recalled that J.E. told them that
Newman "stuck his thing in my butt," and each of them explained to the jury that they inspected
J.E.'s bottom, saw that her anus was red and enlarged, and immediately called the police. The
nurse who examined J.E. at the hospital that afternoon also testified during the trial. She was
questioned at length about her expertise as a sexual assault examiner and then about the medical
examination she performed on J.E. in particular. The nurse explained that she found signs of anal
trauma, and she described to the jury the two-centimeter anal laceration visible in the magnified
photographs taken during the examination. She, too, testified that J.E. told her that Newman
"stuck his thing in my butt" and that it hurt. J.E. then related this same story to the jury herself.

 In light of the abundance of consistent testimony and medical evidence presented
at trial, the jury could easily have found Newman guilty beyond a reasonable doubt without
considering the written statements that he made to the police. Newman's only point of error is
overruled.


CONCLUSION

 We hold that it was not error for the trial court to admit into evidence the two
written statements Newman produced during his interview with the police. We overrule this point
of error and affirm the trial court's judgment of conviction.



 


 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Affirmed

Filed: October 26, 2000

Do Not Publish


1. Article 38.22, section 2 provides that any written statement obtained during a custodial
interrogation may not be used against the accused unless the face of the statement reflects that the
accused received admonishment of his rights prior to making the statement.


 790 S.W.2d 618, 621-22 (Tex. Crim. App. 1990) (finding that fact that appellant
came to authorities of his own free will and was allowed to leave unhindered outweighed fact that
he was focus of criminal investigation).

 Newman argues, however, that the fact that an interrogation begins as noncustodial
does not preve