Patricia MAESTAS, Appellant,

v.

The STATE of Texas.

No. 496–98

Court of Criminal Appeals of Texas.

Feb. 24, 1999.

Richard Gould, McAllen, for appellant.

Theodore C. Hake, Asst. Dist. Atty., Edinburg, Matthew Paul, State's Atty., Austin, for State.

### *OPINION*

MEYERS, J., delivered the opinion of the Court, in which McCORMICK, P.J., and MANSFIELD, KELLER, PRICE, JOHNSON, and KEASLER, J.J., joined.

■ A grand jury indicted Appellant for aggravated assault with a deadly weapon. TEX. PENAL CODE § 22.02(a)(1). The jury found Appellant guilty and the court as-

sessed punishment at ten years imprisonment.[1] The court of appeals affirmed Appellant's conviction. *Maestas v. State*, 963 S.W.2d 151 (Tex.App.—Corpus Christi 1998, pet. granted). We granted Appellant's petition for discretionary review to determine whether the court of appeals properly evaluated Appellant's claim that the police violated her Fifth Amendment right to remain silent.[2] Because the facts of this case do not involve an evaluation of credibility of any witness by the trial judge, we will conduct our own de novo review. *See Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App.1997).

### I.

On October 4, 1993, Officer Jaime Vasquez arrested Appellant at the McAllen airport. Vasquez advised Appellant that she was under arrest and read her the *Miranda*[3] warnings. Vasquez read Appellant her *Miranda* rights again upon arrival at the police station, approximately one hour after her arrest. Appellant indicated she understood her rights and signed a waiver. Appellant stated she did not want to talk to police.[4] After Appellant initialed the form, police placed her in a holding cell at approximately 4:30 p.m.

On October 5, 1993 at approximately 11:00 a.m., Appellant signed another waiver form. Appellant told Vasquez she did not want to talk to police. Vasquez left Appellant in her cell and continued to investigate the crime. Around 8:00 p.m. Vasquez brought Appellant to his office, Mirandized her again, and asked some additional questions. Appellant then indicated she was willing to talk to the police. Vasquez Mirandized Appellant again, and she signed a statement indicating she understood her rights. Vasquez questioned Appellant

---

1. Additionally, the trial court found that commission of the offense involved the use of a deadly weapon.

2. Specifically, Appellant asks:
   Where a suspect has previously on two occasions affirmatively indicated to the police, after the administration of *Miranda* warnings, that she does not wish to speak to them, does a confession obtained after the third, fourth, and fifth police-initiated attempts to interview the suspect comply with the requirement that the police 'scrupulously honor' the suspect's right to remain silent?

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. During the hearing on Appellant's motion to suppress her confession, Vasquez testified Appellant appeared intoxicated at the time of her arrest. He stated Appellant had a moderate to strong smell of alcohol on her breath, was a little unsteady in her balance, had somewhat bloodshot eyes, exhibited slurred speech, did not appear to be following instructions well, and initialed the waiver form in an improper location.

for several hours and took notes on her responses. Police returned Appellant to her cell while Vasquez prepared a typed version of Appellant's statement. On October 6, 1993, Appellant read the statement, including the *Miranda* warnings, and signed it at approximately 1:30 a.m.

Later that day, Appellant provided additional information to Vasquez. Vasquez advised Appellant of her *Miranda* rights again before discussing the new information.[5] Appellant assisted Vasquez in modifying her original statement to include the new information. Vasquez prepared the amended statement, which included *Miranda* warnings, and read it to Appellant. Appellant signed the statement. During this entire time period, the police provided Appellant with basic necessities including drinking water, a toilet, a bed, and a source of light. Appellant never invoked her right to an attorney.

Appellant moved to suppress her statement on the ground that it was obtained in violation of her constitutional right to remain silent. The trial court overruled Appellant's motion to suppress, and admitted the confession at trial.

## II.

The Fifth Amendment to the United States Constitution guarantees that "No person ... shall be compelled in any criminal case to be a witness against himself[.]" The importance of this right is emphasized by its inclusion in the *Miranda* warnings. In *Miranda*, the United States Supreme Court explained the implications of an assertion of the right to remain silent:

Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off

questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked.

*Miranda*, 384 U.S. at 473–74, 86 S.Ct. 1602. Following the *Miranda* language to its logical conclusion, however, would produce the absurd result that no confession or inculpatory statement would ever be admissible—even if the accused changed his mind and wanted to speak with police after invoking the right to remain silent.

In *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the Supreme Court explained that no passage in the *Miranda* opinion "can sensibly be read to create a *per se* proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a right to remain silent." *Mosley*, 423 U.S. at 102–103, 96 S.Ct. 321. The Court continued,

A reasonable and faithful interpretation of the *Miranda* opinion must rest on the intention of the Court in that case to adopt 'fully effective means ... to notify the person of his right of silence and to assure that they exercise of the right will be scrupulously honored ...' 384 U.S., at 479 [86 S.Ct. 1602]. The critical safeguard identified in the passage at the time is a person's 'right to cut off questioning.' *Id.*, at 474 [86 S.Ct. 1602]. Through the exercise of his option to terminate questioning he can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting. We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'

*Mosley*, 423 U.S. at 103–104, 96 S.Ct. 321 (footnotes omitted). Examining the facts

---

**5.** According to testimony provided at the pretrial hearing and again at trial, this would have been the seventh time Appellant was advised of her *Miranda* rights since her arrest.

present in *Mosley*, the Court concluded admission of the petitioner's statement did not violate his right to remain silent.

In *Mosley*, The Supreme Court found the following factors important to this analysis: (1) whether the suspect was informed of his right to remain silent prior to the initial questioning; (2) whether the suspect was informed of his right to remain silent prior to the subsequent questioning; (3) the length of time between initial questioning and subsequent questioning; (4) whether the subsequent questioning focused on a different crime; and (5) whether police honored the suspect's initial invocation of the right to remain silent. Thus *Mosley* created an ad hoc test in which "courts must evaluate the facts of each case to determine if the resumption of police interrogation was consistent with scrupulous observance of the right to cut off questioning." *United States v. Alvarado–Saldivar*, 62 F.3d 697, 699 (5 th Cir. 1995), citing *Wilcher v. Hargett*, 978 F.2d 872, 877 (5 th Cir.1992); *see also Phillips v. State*, 701 S.W.2d 875, 890–91 (Tex.Crim.App. 1985).[6] *See also Watson v. State*, 762 S.W.2d 591 (Tex.Crim.App.1988),[7] and *Murphy v. State*, 766 S.W.2d 246 (Tex.Crim.App.1989).

**6.** *Phillips* was a capital murder case on direct appeal to this Court. As the appellate court, we performed the review mandated by *Mosley*.

**7.** Appellant argues *Watson* supports her contention that police did not scrupulously honor her right to remain silent. In *Watson*, we reiterated that *Mosley* requires "each case must ... be decided on the totality of the circumstances in that particular case." *Watson*, 762 S.W.2d at 597.

In *Watson*, we concluded the court of appeals erred because it assumed the appellant had to verbally and specifically assert his right to remain silent before police had to scrupulously honor his decision to remain silent: "There need not be a formal invocation of constitutional or *Miranda* rights. Anything said or done by the defendant that could reasonably be interpreted as a desire to invoke these rights should be sufficient to halt questioning." *Id.* at 598. As such, the court of appeals should have applied the *Mosley* test. In light of the fact that the appellant made it clear he wished to remain silent, police did not stop questioning, police interrogated the appellant four times in the same day, the interrogations were separated by a few hours, and the same police interrogated the ap-

## III.

◼ In *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App.1997), this Court explained the standards of review for different types of cases. We said

appellate courts, including this Court, should afford [almost total deference] to trial courts' rulings on 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. The appellate courts may review *de novo* 'mixed questions of law and fact' not falling within this category.

*Guzman*, 955 S.W.2d at 89. The first step in our appellate analysis is to determine which standard applies.

◼ The present case presents an "application of law to fact" question. In making the decision we now review, the court of appeals had to consider evidence in the record and apply the law regarding the right to remain silent, as set forth in *Miranda* and *Mosley*. Under the circumstances present in this case, the resolution of this issue does not turn on an evaluation of credibility and demeanor.[8] As such, we review the court of appeals' decision de novo.

pellant regarding the same crime, we held police did not scrupulously honor the appellant's right to remain silent. Finally, we noted the totality of the circumstances did not demonstrate that the appellant knowingly, intelligently, and voluntarily waived his right.

The present case presents completely different facts and a different legal inquiry.

*Watson* does not support Appellant's contention that she is entitled to relief. Instead, it stands for the proposition that each case must be analyzed based on its own facts and circumstances.

**8.** This is because the officers' testimony as to what transpired from Appellant's arrest up to Appellant's confession is uncontroverted. Appellant did not provide conflicting testimony or contradict the officers' presentation of the facts in any way. In addition, Appellant did not present any complaints, for example complaints concerning the conditions of her jail cell, or complaints that she was coerced, intimidated, or forced to speak with police. Under different circumstances, where the police and the appellant provided conflicting testimony, resolution of this question would involve an evaluation of credibility and demeanor because the trial court would

In our de novo review, we apply *Miranda* and *Mosley*. We recognize the prominence of the right to remain silent as well as the ad hoc review set forth by the United States Supreme Court. With this in mind, we turn to the factors set out in *Mosley* and examine the record to determine whether each factor weighs in favor of finding a "scrupulous honoring" of Appellant's right to remain silent. *See United States v. Alvarado–Saldivar,* 62 F.3d 697, 699 (5th Cir.1995) (examining the record and weighing the *Mosley* factors). We emphasize that whether a resumption of questioning is consistent with "scrupulously honoring" the right to remain silent depends on the unique facts and circumstances of each case.[9]

Police testified that they informed Appellant of her rights prior to the initial questioning as well as prior to each subsequent questioning. Accordingly, the first two *Mosley* factors weigh in favor of "scrupulous honoring." In addition, police stopped interrogating Appellant as soon as Appellant said she wished to invoked her right to remain silent. Once Appellant began to talk to the officers, she did not try to re-invoke her right to remain silent, to end the interrogation, or to speak with an attorney. Thus the fifth *Mosley* factor also weighs in favor of "scrupulous honoring."

Officer Vasquez testified that Appellant appeared to be intoxicated when she was arrested and initially read her *Miranda* rights.[10] Officers Mirandized Appellant again after she had slept and appeared to be sober, and Appellant indicated she wished to remain silent. Approximately nine hours later, Vasquez confronted Appellant with additional information discovered during his investigation. He Mirandized Appellant, who indicated that she understood her rights and then signed a statement waiving those rights. Appellant's conversation with Vasquez lasted several hours. Appellant then waited several hours for Vasquez to prepare a written version of her statement, which she signed. The third *Mosley* factor was meant to guard against abuses in subsequent questioning. For example, in *United States v. Hernandez,* 574 F.2d 1362 (5th Cir.1978), the Fifth Circuit found a *Miranda* violation where police resumed questioning thirty to forty-five minutes after the appellant's invocation of the right. The present case is more like *Kelly v. Lynaugh,* 862 F.2d 1126 (5th Cir.1988), *cert. denied,* 492 U.S. 925, 109 S.Ct. 3263, 106 L.Ed.2d 608 (1989) and *West v. Johnson,* 92 F.3d 1385 (5th Cir.1996), two cases in which the Fifth Circuit found police had scrupulously honored the suspect's assertion of the right to remain silent. In *Kelly,* police Mirandized Kelly when he was arrested. Five hours later, officers approached Kelly and read the *Miranda* warnings, and Kelly again invoked his right to remain silent, which the police honored. After four to six hours, po-

---

have to decide which testimony deserved more weight. In that case, our review would "afford almost total deference" to the trial court's determination, in accordance with *Guzman.*

9. Citing many of the examples that illustrate this point, the court of appeals wrote:

Determining whether a resumption of questioning is consistent with scrupulous observance of the right to cut off questioning depends upon the circumstances of each case. *Murphy,* 766 S.W.2d at 249; *see Mosley,* 423 U.S. at 104–05, 96 S.Ct. 321 (interrogation immediately ceased, reinstated on different subject more than two hours later, after warnings were readministered, constitutes scrupulous honoring of right); *United States v. Bosby,* 675 F.2d 1174 (11th Cir.1982) (interrogation immediately ceased, reinstated two weeks later, after warnings readministered; scrupulous honoring); *Murphy,* 766 S.W.2d 246 (defendant arrested in Houston on Anderson County warrant, declines to talk, fifteen days later agrees to talk to

Houston police in Anderson County jail after warnings readministered and after learning he's a suspect in Houston murder; scrupulous honoring); *Phillips v. State,* 701 S.W.2d 875 (Tex.Crim.App.1985), *overruled on other grounds, Hernandez v. State,* 757 S.W.2d 744, 752 (Tex.Crim.App.1988) (interrogation immediately ceased, defendant given lunch, returned to his cell, later that evening warnings repeated, defendant wanted guarantees, officer refused, confession given; scrupulous honoring).

*Maestas,* 963 S.W.2d at 160.

10. Officers first Mirandized Appellant as they were arresting her and placing her into a police vehicle, and a second time upon arrival at the police station. Vasquez said Appellant smelled of alcohol and exhibited other characteristics of intoxication, such as slurred speech, unsteady balance, and inability to follow directions, as evidenced by the fact that she initialed the written warnings in the wrong place when Mirandized at the police station.

lice approached Kelly with a co-defendant's confession. Kelly orally confessed and signed a written confession which included the *Miranda* warnings. In *West*, police Mirandized West when arresting him. He invoked his right to remain silent during the initial police interview and police terminated the questioning. Police approached West again more than thirteen hours later. We find the third *Mosley* factor weighs in favor of "scrupulous honoring."

Subsequent questioning did not focus on a different crime, so the fourth *Mosley* factor does not weigh in favor of "scrupulous honoring." As part of the *Mosley* analysis, however, we also consider other facts and circumstances in determining whether Appellant's right to remain silent was "scrupulously honored." Appellant was not coerced, threatened, or promised anything for talking with officers. Officers testified Appellant had access to necessities such as food, water, and restroom facilities. Finally, although officers initiated the questioning that resulted in Appellant's statement, ongoing investigations provided them with additional information which tended to show that Appellant was present at the scene of the murder. These additional considerations tend to support the conclusion that police "scrupulously honored" Appellant's right to remain silent.

After applying the ad hoc test set out in the case law to the evidence in the record and performing our de novo review, we find Appellant's right to remain silent was "scrupulously honored." As such, we hold the court of appeals did not err in holding the police scrupulously honored Appellant's right to remain silent.

The judgement of the court of appeals is affirmed.

HOLLAND, J., concurs with note:

I would conclude appellant's petition for discretionary review was improvidently granted. Tex. R. App. P. Rule 69.3.

WOMACK, J., dissented.