# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00010-CR

**Russell Paul Newman, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 50,104, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

A jury found appellant Russell Paul Newman guilty of aggravated sexual assault and assessed punishment at imprisonment for forty-five years. *See* Tex. Penal Code Ann. § 22.021(1)(B) (West 1994). In his only point of error, Newman asserts that the trial court erred in admitting into evidence written statements that he made to police without being warned of his rights. We will overrule this point of error and affirm the trial court's judgment.

## FACTUAL BACKGROUND

Russell Paul Newman lived in the trailer home of James and Shontaye Jones in the summer months of 1999. During that time, the Joneses often looked after J.E., a nine-year-old girl, and her two younger siblings. The children occasionally stayed with the Joneses overnight, and one overnight stay in August led to the aggravated sexual assault involved in this case.

On August 2, 1999, James Jones was on his way to work at 4:30 a.m. when he heard J.E. cry, "Stop, get off me. You're hurting me," from the bedroom where Newman was staying. Jones opened the bedroom door to find both Newman and J.E. covered up in bed. When Jones asked what was going on, Newman responded that he had just popped the girl on the hand.

Jones testified at trial that although he went on to work that day, he became increasingly troubled by what he had seen and heard that morning. When Jones arrived home later that afternoon and asked J.E. about the morning incident, she told him that Newman "stuck his thing in my butt." The Joneses immediately contacted the police and took J.E. to an area hospital for examination. The nurse who saw J.E. that day testified at trial that the girl had suffered trauma to the anal area.

In the meantime, the detective assigned to J.E.'s case contacted Newman and suggested that he come to the police department. Newman came to the station that evening around 7:45 p.m., but the detective who had called him was at the hospital with J.E. Newman spoke instead with Detective Hall, who informed Newman that he was a suspect in the sexual assault, but that he was not under arrest and could leave at any time. Newman does not dispute that Detective Hall informed him that he was only a suspect and that he was free to leave when he wished.

Within minutes of his arrival, Newman told Detective Hall that he awoke during the middle of the previous night to the sound of J.E.'s voice and found himself touching her anus with his penis. He explained that he did not understand what was going on at the time and immediately got up to put on some shorts. Detective Hall asked him if he wished to put his story

2

in writing; Newman wrote and signed a brief statement reflecting his oral admissions. Detective Hall then authored a second statement which Newman signed as well. Detective Hall did not advise Newman of his *Miranda* rights at any time during their conversation. The entire interrogation lasted less than three-quarters of an hour, and Newman left the station in his own vehicle around 8:30 p.m. He was arrested later that night for an outstanding traffic warrant.

## DISCUSSION

At trial, Newman moved to suppress the written statements obtained by the police on grounds that he was never given his *Miranda* warnings before he made the statements. The trial court overruled this motion, and Newman now challenges the court's implicit finding that he was not "in custody" during the interview with police and thus was not entitled to the protections of *Miranda*, embodied in article 38.22 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (West 1979).[1]

This case presents a mixed question of law and fact. In making its decision, the trial court had to consider whether Newman was in custody and had to decide his legal right to *Miranda* warnings based on that finding. Under the standard of review articulated in *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997), we defer to the trial court's decision if the resolution of the mixed question turns on an evaluation of credibility and demeanor, but we review the court's decision *de novo* if the mixed question of law and fact does not turn on credibility

---

[1] Article 38.22, section 2 provides that any written statement obtained during a custodial interrogation may not be used against the accused unless the face of the statement reflects that the accused received admonishment of his rights prior to making the statement.

3

issues. *See id.* at 89; *Maestas v. State*, 987 S.W.2d 59, 62 (Tex. Crim. App. 1999), *cert. denied*, *Maestas v. Texas*, 120 S. Ct. 93 (1999). Because the interviewing detective's account of the events surrounding his interview with Newman is uncontroverted, the resolution of Newman's right to *Miranda* warnings does not involve an evaluation of credibility. Thus, we review the trial court's decision *de novo*. *See Maestas*, 987 S.W.2d at 62 n.8 (explaining that uncontested factual contentions do not engage the trial court in a balancing act of credibility and are thus justifiably reviewed *de novo*).

We determine first whether Newman was in custody because *Miranda* and article 38.22 apply only to statements made as a result of custodial interrogation. *See Rodriguez v. State*, 939 S.W.2d 211, 215 (Tex. App.–Austin 1997, no pet.). "A person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (*citing Stansbury v. California*, 511 U.S. 318, 322 (1994)). The reasonable person test demands that the custody determination be based entirely upon objective circumstances. *Dowthitt*, 931 S.W.2d at 254.

The Court of Criminal Appeals has identified at least four general situations that may constitute custody: (1) when the suspect is physically deprived of his freedom of movement in any significant way, (2) when the suspect is told by a law enforcement officer that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when probable cause to arrest exists and law enforcement officers do not tell the suspect that he is free to leave.

4

*Id.* at 255. For the first three situations, the suspect's freedom of movement must be restricted to the degree associated with an arrest, as opposed to an investigative detention. *Id.* Stationhouse questioning is not, in and of itself, a custodial interrogation. *Id.* As for the fourth scenario, custody is established only if the officer's knowledge of probable cause is manifested to the suspect, and that manifestation, combined with the other objective circumstances, would lead a reasonable person in the suspect's position to believe that he is under restraint to the degree associated with an arrest. *Id.*

In the instant case, Newman was not in custody at the time that he gave his oral and written statements to the police. He came to the police station voluntarily. Detective Hall then informed Newman that he was a suspect in the sexual assault of J.E., but this investigative focus did not elevate the consensual inquiry to the level of a custodial interrogation as appellant suggests. "Even a clear statement by an officer that the person under interrogation is the prime suspect is not in itself dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest." *Rodriguez*, 939 S.W.2d at 216 (*citing Stansbury*, 511 U.S. at 325). There is no evidence in the record and Newman does not now contend that his freedom to leave was hindered in any way during the interview. In fact, Newman left the station on his own accord less than an hour after his initial arrival. A reasonable person in these circumstances would not have thought that his freedom to leave was suspended to the degree associated with formal arrest. *See Oregon v. Mathiason*, 429 U.S. 492, 493-95 (1977) (holding an interview with police behind closed doors as noncustodial since appellant was allowed to come and go voluntarily); *Meek v. State*, 790 S.W.2d 618, 621-22 (Tex. Crim. App. 1990) (finding that

5

fact that appellant came to authorities of his own free will and was allowed to leave unhindered outweighed fact that he was focus of criminal investigation).

Newman argues, however, that the fact that an interrogation begins as noncustodial does not prevent it from later becoming custodial. *See Dowthitt*, 931 S.W.2d at 255. According to the Court of Criminal Appeals in *Dowthitt*, a noncustodial interrogation may become custodial once a suspect makes an incriminating admission to the police. *Id.* at 256-57. Under this rationale, Newman argues that the interview became custodial immediately after he made the initial oral admissions to Detective Hall, and thus his written statements were inadmissible under article 38.22, section 2. Newman fails to note, however, that the court in *Dowthitt* did not base its finding of custody upon the development of a pivotal admission alone. *See id.* Instead, the court merely added this fact to the other objective circumstances under consideration in that case, including the fifteen-hour duration of the interrogation and the fact that the suspect was accompanied by police on bathroom breaks throughout the interview. *Id.* None of these other factors tending to show restraint of freedom of movement were present during Newman's interrogation; consequently, we cannot say that the trial court erred in its application of the law to the objective facts present in this case.

Even if it was error for the trial court to admit Newman's written statements into evidence, any such error would be harmless beyond a reasonable doubt. *See* Tex. R. App. P. 44.2(a); *Dowthitt,* 931 S.W.2d at 263. Although we recognize that a suspect's admissions to police often weigh heavily in the minds of jurors, this is an unusual case because the defendant's statements were only a small part of the overwhelmingly consistent testimony and evidence offered

6

to prove his guilt. Multiple witnesses, including the victim, testified at trial about the events surrounding the assault, and Newman did not offer any controverting theory of defense to rebut their testimonies.

James Jones testified that he heard J.E. screaming from Newman's room in the early hours of the morning, and that when he opened the door, he could see that J.E. and Newman were in the bed together. Shontaye Jones testified that when she attempted to wake and dress the three children later that morning, J.E. was not in the room where she and her siblings had been put to bed the night before. Shontaye searched the trailer and found J.E. in bed with Newman. She then witnessed J.E. leave the bedroom in one of Newman's t-shirts even though she had put J.E. to sleep in her flowered jumper. Both of the Joneses recalled that J.E. told them that Newman "stuck his thing in my butt," and each of them explained to the jury that they inspected J.E.'s bottom, saw that her anus was red and enlarged, and immediately called the police. The nurse who examined J.E. at the hospital that afternoon also testified during the trial. She was questioned at length about her expertise as a sexual assault examiner and then about the medical examination she performed on J.E. in particular. The nurse explained that she found signs of anal trauma, and she described to the jury the two-centimeter anal laceration visible in the magnified photographs taken during the examination. She, too, testified that J.E. told her that Newman "stuck his thing in my butt" and that it hurt. J.E. then related this same story to the jury herself.

In light of the abundance of consistent testimony and medical evidence presented at trial, the jury could easily have found Newman guilty beyond a reasonable doubt without

7

considering the written statements that he made to the police. Newman's only point of error is overruled.

## CONCLUSION

We hold that it was not error for the trial court to admit into evidence the two written statements Newman produced during his interview with the police. We overrule this point of error and affirm the trial court's judgment of conviction.

_____

_____ Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Affirmed

Filed:   October 26, 2000

Do Not Publish