# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00458-CR

**Milton Merle Milburn, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR2001-275, HONORABLE GARY STEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Milton Merle Milburn guilty of arson and theft. Tex. Pen. Code Ann. § 28.02 (West 2003), § 31.03 (West Supp. 2004). The court imposed a fifty-year prison term and a $500 fine for the arson, and a ten-year state jail term for the theft. On appeal, Milburn challenges the legal and factual sufficiency of the evidence to sustain the jury verdicts. He also contends a statement he made to the police was erroneously admitted. We will reform Milburn's theft conviction to a class A misdemeanor and remand for reassessment of punishment. We will affirm the arson conviction.

Carl and Barbara Doeppenschmidt awoke on the morning of December 18, 2000, to find a barn on their property engulfed in flames. The fire severely damaged the contents of the barn, including three automobiles, a boat, and various tools. There is no dispute that the fire was the result

of arson.  It was the State's theory, accepted by the jury, that Milburn started the fire to hide evidence of thefts he committed during the week preceding the fire.  Milburn, who was employed by Texdoor in San Antonio, had spent that week with other Texdoor employees installing a new door on the Doeppenschmidts' barn and had been given the code used to open the gate to the property.  A baseball cap with the Texdoor emblem was found lying on the ground near the barn after the fire.  Carl Doeppenschmidt testified that the cap had not been there the day before.  DNA tests showed that Milburn wore this cap.

### *Theft*

The indictment alleged that Milburn stole an angle grinder, impact wrench, winch, electric drill, air brush, and vehicle identification plate collectively worth $1500 or more.  *See* Tex. Pen. Code Ann. § 31.03(e)(4)(A) (West Supp. 2004).  In his third point of error, Milburn urges that the evidence is legally and factually insufficient to prove that this property was stolen, much less that he was the thief.  In point of error one, Milburn contends the State failed to prove that the stolen property was worth the amount alleged.

In a legal sufficiency review, the question is whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981).  A factual sufficiency review asks whether a neutral review of all the evidence, both for and against the finding of guilt, demonstrates that the proof of guilt is either so obviously weak or so greatly outweighed by contrary proof as to

2

undermine confidence in the jury's determination. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

Carl Doeppenschmidt testified that on the afternoon of December 17, the day before the fire, he noticed that the impact wrench he kept in the barn was missing. During the week following the fire, Doeppenschmidt discovered that the angle grinder, electric drill, air brush, and winch were also missing. Unlike other tools that were damaged by the fire but still identifiable, he could find no trace of these items in the places they were kept in the barn. He was particularly sure that the winch had been taken, because he had removed it from his truck only about a week before the fire and could distinctly remember where he put it in the barn. Meanwhile, investigators discovered that the vehicle identification number plate had been removed from one of the automobiles damaged in the fire, a 1955 Thunderbird. A department of public safety motor vehicle theft specialist testified that the rivets with which the plate had been attached were bent in a way that indicated that the plate had been pried off the vehicle before the fire. The witness testified that there was no indication that the plate had melted away.

David Chandler testified that he purchased a winch from Milburn on December 13, five days before the fire. Chandler mounted the winch on his own truck, but he later sold the winch to another person and it was not recovered. Chandler said that the winch he bought from Milburn did not have the various accessories needed to operate it, such as a battery cable and a remote controller. Doeppenschmidt testified that these accessories for his winch had not been stolen; they had been kept in a tool box in his pickup rather than with the winch itself. Doeppenschmidt

3

identified State's exhibit 14 as being a winch identical to the winch taken from his barn. Chandler identified the exhibit as being identical to the winch he purchased from Milburn.

On December 15, three days before the fire, appellant's girlfriend, Jonnie Taylor, pawned an air brush at a San Antonio pawn shop. Taylor testified that Milburn gave her the air brush and asked her to pawn it. The pawned air brush was recovered by police and identified by Doeppenschmidt as being just like the one he had purchased at the Sears catalog store in New Braunfels several years before, but he did not conclusively state that it was his air brush. The former manager of the catalog store, now closed, testified that the box containing the pawned air brush bore a label indicating that it had been purchased in that store. The box also had been reinforced with heavy plastic tape, just as Doeppenschmidt testified he had done. A police officer testified that when questioned, Milburn claimed that the air brush belonged to him.

Charlene Derrico testified that she had a conversation with Milburn and Taylor in January 2001 during which "they were all kind of upset. Jonnie was upset and crying. . . . And then they started talking about Milton was in trouble because of a fire, and he had lost his hat –." Derrico testified that Milburn told her he had been working on a building in which there were tools and old cars, and that he had stolen tools from the building to raise money to buy Christmas presents for Taylor. She said he also told her that he set the building on fire and was worried because he left his hat at the scene. Milburn challenges the credibility of Derrico's testimony, pointing to her admission that she disliked Taylor. Appellant also notes that Taylor contradicted Derrico's testimony, saying that she did not remember ever hearing Milburn make the statements Derrico

4

attributed to him. He also draws our attention to testimony that Taylor took and passed a polygraph exam, although the questions she was asked are not in evidence.

The State also introduced in evidence a letter written by Milburn while in jail following his arrest. In this letter, he professed his love for Taylor and said, "Yes, it is my fault I'm in this place – But I had to keep buying her stuff."

At the least, the evidence is legally and factually sufficient to prove that Milburn stole Doeppenschmidt's air brush and winch. With respect to the former item, Doeppenschmidt testified that the air brush pawned by Taylor was identical to the one missing from his barn. The other circumstances — the labeling on the box, the reinforcing tape, the codes showing that the pawned air brush was purchased in the Sears store — also link the pawned air brush to Doeppenschmidt. These circumstances substantially outweigh Milburn's claim that the pawned air brush belonged to him. We hold that the evidence is both legally and factually sufficient to prove that the air brush in question belonged to Doeppenschmidt and was stolen from him by Milburn.

The winch Milburn sold to Chandler was never recovered, and thus Doeppenschmidt was unable to identify it as belonging to him. Nevertheless, the evidence shows that the winch Milburn sold to Chandler was identical to the winch taken from Doeppenschmidt's barn during the week Milburn was working there. The timing of the sale and Milburn's later statements to Derrico also support the conclusion that the winch Chandler purchased from Milburn had been stolen from Doeppenschmidt. Viewed in the light most favorable to the verdict, a rational trier of fact could conclude beyond a reasonable doubt that Milburn was guilty of stealing Doeppenschmidt's winch.

5

Viewed neutrally, the evidence is neither so weak nor so outweighed by contrary evidence as to undermine confidence in the jury's finding.

Because of our disposition of Milburn's first point of error, we need not discuss whether the evidence supports a finding that he stole the other property alleged in the indictment. Point of error three is overruled.

In point of error one, Milburn urges that the evidence shows that all the property alleged to have been stolen was worth, at most, $1270. The State concedes that this contention is correct. The court's charge authorized the jury to convict appellant for the lesser offense of theft of property having a value of $500 or more but less than $1500. *See* Tex. Pen. Code Ann. § 31.03(e)(3) (West Supp. 2004). Appellant acknowledges that the evidence supports a finding that the air brush and winch were together worth $800. We will therefore reform the court's judgment to reflect a conviction for the lesser offense. *See Collier v. State*, 999 S.W.2d 779, 782 (Tex. Crim. App. 1999). To that extent, point of error one is sustained.

### *Arson*

Because Milburn does not challenge the sufficiency of the evidence to prove that the fire at the Doeppenschmidts' barn was the result of arson, we will not discuss the evidence in that regard. Milburn's only contention is that the evidence is legally and factually insufficient to prove that he was the arsonist. He argues that his hat could have been left at the barn during the week he was there working and gone unnoticed. And he again challenges the credibility of Derrico's testimony describing the admissions he made to her.

6

The jury is the exclusive judge of the credibility of the witnesses and the weight to give their testimony. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984); *Castellano v. State*, 810 S.W.2d 800, 807 (Tex. App.—Austin 1991, no pet.). Even in a factual sufficiency review, due deference must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, and the reviewing court may disagree with the fact finder only when the record clearly indicates that such a step is necessary to prevent a manifest injustice. *Johnson*, 23 S.W.3d at 9. Applying the appropriate standards of review, we conclude that the evidence is legally and factually sufficient to link Milburn to the fire and thus to sustain the arson conviction. Point of error four is overruled.

### *Videotaped Statement*

Following his arrest in May 2001, Milburn was briefly questioned by Deputy Tommy Hubertus. The questioning was videotaped, and the tape was played for the jury over Milburn's objection. We quote the interview in its entirety, as transcribed by the court reporter when it was played for the jury:

[Hubertus]: Milton, I'm just going to advise you of your Miranda warnings. [Officer advises Milburn of his rights.] Do you understand that?

The Defendant: Uh-huh.

[Hubertus]: Just print your name there and sign there. All that is is that you understand.

The Defendant: Do I get a copy of that?

[Hubertus]: Sure. Do you know why you're in jail, Milton?

7

The Defendant: Uh-huh.

[Hubertus]: Why?

The Defendant: Y'all think I set a fire.

[Hubertus]: That's what I want to talk to you about.

The Defendant: I don't have nothing to say.

[Hubertus]: You don't have nothing to say?

The Defendant: I had nothing to do with it.

[Hubertus]: (Inaudible)

The Defendant: I had nothing to do with it.

[Hubertus]: You had nothing to do with it?

The Defendant: No.

[Hubertus]: Well, why do we have property that was pawned by you?

The Defendant: That was mine. It didn't come from there. I didn't get that shit from there and you know that.

[Hubertus]: Yeah, I do.

The Defendant: No, you don't.

[Hubertus]: Where did you get it from, then?

The Defendant: It will come out in court. Don't worry about it. I have nothing to say to you. Take me back to my cell.

[Hubertus]: You don't want to talk at all?

The Defendant: No, I don't

[Hubertus]: I just wanted you to (inaudible)

8

The Defendant: I would like to have a copy of that, though.

[Hubertus]: I will make you a copy. I just wanted to –

The Defendant: You guys know I didn't have nothing to do with that fire.

[Hubertus]: (Inaudible)

Milburn argues that the officer did not scrupulously honor his right to remain silent by failing to terminate the interview when Milburn said, "I don't have nothing to say." For this reason, he urges that the court erred by admitting the remainder of the taped questioning. Because this point of error presents an "application of law to fact" question, we conduct a de novo review. *Maestas v. State*, 987 S.W.2d 59, 62 (Tex. Crim. App. 1999).[1]

Custodial interrogation must cease if the person being questioned indicates that he wishes to remain silent. *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966). An invocation of the right to remain silent must be "scrupulously honored." *Maestas*, 987 S.W.2d at 61 (quoting *Michigan v. Mosley*, 423 U.S. 96, 104 (1975)). The failure to cut off questioning after a suspect invokes his right to remain silent renders any subsequently obtained statements inadmissible. *Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996). To be effective, the invocation of rights must be unambiguous. *Id*.

When Milburn told Hubertus, "I don't have nothing to say," the officer responded by repeating Milburn's statement in the form of a question. This was not a question calculated to elicit an incriminating response. *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Instead, it appears

---

[1] Milburn's brief cites both the Fifth Amendment to the United States Constitution and article I, section 10 of the Texas Constitution. His argument is based only on Fifth Amendment authority, however, and he concedes in a footnote that the state constitutional guarantee does not confer greater protection in this context.

to have been calculated to elicit Milburn's affirmation that he wished to remain silent. Milburn responded by volunteering, "I had nothing to do with it." Because Milburn thereby manifested a desire to continue the conversation, we conclude that he did not unambiguously invoke the right to silence and the officer did not violate his rights by continuing the questioning. After a few more questions by the officer, Milburn said, "I have nothing to say to you. Take me back to my cell." Once again, the officer asked Milburn to confirm the invocation of rights by asking, "You don't want to talk at all?" This time, Milburn affirmed his desire to terminate the interview and no further questioning took place. We find no violation of the Fifth Amendment right and overrule point of error two.

We affirm the judgment of conviction for arson. We modify the judgment convicting Milburn of theft to reflect a conviction for stealing property having a value of $500 or more but less than $1500 and, as modified, affirm the judgment with respect to Milburn's guilt. We reverse that portion of the theft judgment imposing sentence and remand the cause to the district court for reassessment of punishment within the proper punishment range. *See* Tex. Code Crim. Proc. Ann. art. 44.29 (West Supp. 2004).

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed in Part; Modified and, as Modified, Affirmed in Part; Reversed and Remanded in Part

Filed: February 5, 2004

Do Not Publish

10