TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00330-CR







The State of Texas, Appellant



v.



Milton Dwayne Gobert, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. D1DC06-904006, HONORABLE BOB PERKINS, JUDGE PRESIDING






O P I N I O N



The State appeals the district court's order granting appellee Milton Dwayne Gobert's
motion to suppress statements. See Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West 2006). At
issue is the admissibility of Gobert's videotaped custodial interrogation by Austin police officers. 
The trial court determined that the officers conducting the interrogation failed to honor
Gobert's invocation of the right to counsel. We agree with the court's conclusion and affirm the
suppression order.

To effectuate the Fifth Amendment privilege against self-incrimination, a suspect has
the right to consult with an attorney and to have counsel present during custodial interrogation, and
the police must explain this right to the suspect before questioning begins. Miranda v. Arizona, 384
U.S. 436, 479 (1966). When a suspect asserts his right to counsel, all interrogation must cease until
counsel is provided or until the suspect personally reinitiates the conversation. Edwards v. Arizona,
451 U.S. 477, 484-85 (1980); Dinkins v. State, 894 S.W.2d 330, 350 (Tex. Crim. App. 1995). The
suspect's request for counsel must be unambiguous, that is, he must articulate his desire to have
counsel present sufficiently clearly that a reasonable police officer in the circumstances would
understand the statement to be a request for an attorney. Davis v. United States, 512 U.S. 452, 459
(1994). If the suspect makes an ambiguous or equivocal reference to an attorney that a reasonable
officer in the circumstances would have understood only as possibly invoking the right to counsel,
questioning need not cease. Id. Although it may be good police practice for interviewing officers
to clarify a suspect's ambiguous statement regarding counsel, both to protect the rights of the suspect
and to minimize the chance of a confession being suppressed due to subsequent judicial second-guessing as to the meaning of the suspect's statement, clarifying questions are not required, and the
officers have no obligation to stop questioning. Id. at 461; Dinkins, 894 S.W.2d at 351-52.

The relevant facts are not in dispute. Gobert, who was suspected of committing the
murder for which he now stands indicted, was arrested for a parole violation and for the assault of
a woman named Christine or Christina. Following his arrest, Gobert was questioned by Austin
detectives Burgh and Scanlon. Burgh began the interview by advising Gobert of his constitutional
and statutory rights. See Miranda, 384 U.S. at 479; Tex. Code Crim. Proc. Ann. art. 38.22, §§ 2, 3
(West 2005). Asked if he understood his rights, Gobert replied that he did and then said, "I don't
want to give up any right, though, if I don't got no lawyer." Scanlon immediately asked, "You don't
want to talk?" The question was repeated by Burgh, "You don't want to talk to us?" Gobert
answered, "I mean, I'll talk to y'all. I mean, I know, you know, what she had said about it, you
know. I'll speak with y'all, but (inaudible), man. I mean, I'll speak with y'all, you know." Scanlon
then said, "Okay, signing this--signing this is not giving up your right. Signing this is
acknowledging that this was read to you." He then added, "Okay? Your choice to talk to us is
different. This--all this is, is acknowledging that you were warned."

Burgh then began to question Gobert regarding his relationship with Christina. After
a number of questions were asked and answered, Scanlon interrupted to ask, "I want to clear
something up, though, because earlier you said you don't want to give up your right to a lawyer. I
want you--I want you--I want to clear up the fact that you want to talk to us about this. Okay? You
understand what I'm saying?" Gobert answered, "Yeah." Scanlon continued, "I want to clear it up. 
I mean, that's--that's what you want to do, right?" Gobert again answered, "Yeah." The
interrogation continued for several hours and ultimately resulted in appellant confessing to the
murder of Mel Kernena Cotton.

At issue is Gobert's statement, "I don't want to give up any right, though, if I don't
got no lawyer." The trial court concluded that this was an unequivocal invocation of the right to
counsel during questioning. The court orally announced its findings and conclusions in the
reporter's record:


I just don't find anything that is unequivocal [sic] about the statement "I'm
not going to waive any rights if I don't got no lawyer." I mean, I think that that's as
unequivocal as I can imagine a statement being.


I mean, if I were a defense lawyer and I was advising my client what to say,
I can't imagine what advice I'd give him to say anything better than that. I mean,
he's saying that he's not going to waive any rights until he has a lawyer. Under
Edwards, once he makes that statement, he's got a right to a lawyer before anything
else happens, you know.


I just--you know, and he was not provided a lawyer. They just--as soon as
he says that, instead of saying, okay, you want a lawyer, we will get you a lawyer, or
instead of--instead of asking him about the lawyer question, they just go totally
around that and they start saying, well, you don't want to talk to us, which is not
really what he had asked.


The right that he asked to invoke was his right to a lawyer, and he says at the
same time he doesn't want to waive any rights until he's got one. I think the fact that
they totally ignored what he said and kept on talking to him about does he want to
make a statement, I think that that implies . . . they really don't believe in the
warnings they have given him . . . .


. . . .


And that's what he's saying, is he doesn't want to give up any right. He
doesn't want to give up his right to remain silent; he doesn't want to give up his right
to have a lawyer appointed for him; he doesn't want to give up his right to terminate
the interview. You know, that's what he says. I assume that that's what he means.


Now, the thing is, at that time what he says, "if I don't got no lawyer," maybe
they might have some question at that point about whether he wanted a lawyer from
that. I don't know how they could have that question.


But if they were going to ask any question, at that point, it seems to me, it was
incumbent upon them to ask, okay, so you're saying you want a lawyer right now? 
Is that what you're saying? They want him to repeat his assertion that he wanted a
lawyer, and then they could proceed along that line. But they don't ask that. They
totally blow by the question of the lawyer deal.


. . . .


Well, either Edwards means what it says or it doesn't. Either you can invoke
your right to a lawyer or you can't. I don't know what he can say to them that
invokes his right to a lawyer any more than this. He says he doesn't want to waive
any rights unless he's got a lawyer, and at that time, it seems to me, under Edwards,
they have got to respect that right . . . . Under Edwards, it seems to me that once he
says, I want a lawyer, that's it. I mean, that's the end of the ball game.



Because the issue is a mixed question of law and fact, we conduct a de novo review. See Maestas
v. State, 987 S.W.2d 59, 62 (Tex. Crim. App. 1999); Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997).

The State argues that Gobert's statement was not a clear assertion of the right to
counsel. The State's position is summarized in this passage from its brief to the Court:


[Gobert] never expressly asked for a lawyer. He never expressly stated he
wanted an attorney there. The State maintains that [Gobert's] statement "I don't
want to give up any right, though, if I don't got no lawyer," was not a clear,
unequivocal, unambiguous invocation of the right to counsel. [Gobert] may have
meant he did not want to waive his right to silence since there was no lawyer there. 
That is not a request for an attorney. Or [Gobert] may have meant he wanted to talk
to a lawyer before he decided whether or not he would waive his right to remain
silent. What exactly he meant is just not clear. His statement being subject to more
than one interpretation, the State submits it did not constitute an unambiguous,
unequivocal request for counsel, nor did it constitute an unambiguous, unequivocal
assertion of his right to remain silent. When the detectives immediately asked
[Gobert] for clarification, [Gobert] promptly and definitely indicated his willingness
to talk to them.



The State's argument confuses the right to counsel with the right to remain silent. 
It may have been unclear, as the State argues, whether Gobert "did not want to waive his right to
silence since there was no lawyer there" or whether Gobert "wanted to talk to a lawyer before he
decided whether or not he would waive his right to remain silent." But Gobert did not contend and
the trial court did not find that Gobert's right to remain silent was violated during the interrogation,
and it is therefore irrelevant whether Gobert's statement to the officers was or was not a clear
invocation of that right. Similarly, it is irrelevant that Gobert subsequently expressed a willingness
to talk to the officers.

The right to consult with counsel before and during any interrogation is independent
of the right to remain silent. Although Gobert did not expressly say that he wanted a lawyer present,
he unambiguously, if ungrammatically, told the officers that he did not give up any right "if I don't
got no lawyer." This was a clear statement that Gobert was unwilling to waive any of his rights
under Miranda and article 38.22 without first consulting counsel. At least one of the officers,
Scanlon, appeared to understand this when he said, "I want to clear something up, though, because
earlier you said you don't want to give up your right to a lawyer." Gobert's willingness to speak to
the officers was not inconsistent with or a waiver of his right to counsel. Gobert apparently believed
that having invoked his right to an attorney, nothing he thereafter said to the officers could be used
against him until counsel had been provided. (1) Under the holding in Edwards, this belief was
justified in the circumstances shown here.

The opinions cited by the dissent are distinguishable on their facts. In Davis v. United
States, the Supreme Court held that a suspect's statement, "Maybe I should talk to a lawyer," uttered
over an hour and a half into a custodial interrogation and after the suspect had previously waived his
Miranda rights was an ambiguous assertion of the right to counsel. 512 U.S. 452, 458-59 (1994). 
The suspect's question in Robinson v. State, "Do I need to talk to a lawyer before I sign?" was
plainly ambiguous; it was neither an assertion of the right to counsel nor a request for counsel. 851
S.W.2d 216, 223-24 (Tex. Crim. App. 1991). In Harper v. State, after the suspect said "I don't even
want to talk unless I have me a lawyer," no further interrogation took place until after one of the
officers asked, "Are you telling us you want to terminate this interview and speak to an attorney or
do you want us to continue to discuss this matter?" and the suspect expressed his desire to continue
without counsel. No. 03-00-00677-CR, 2001 Tex. App. LEXIS 7497, at *4-6 (Tex. App.--Austin
Nov. 8, 2001, no pet.).

The dissent asserts that our holding in this case "blurs the boundaries" of the holding
in Davis and "requires police officers to cease questioning when a statement is made that might
possibly be a request for counsel." To the contrary, we acknowledge that a suspect must
unambiguously request counsel and that an interrogation need not cease following an ambiguous or
equivocal reference to an attorney. Far from blurring the boundaries of this rule, we uphold the
venerable line drawn by long-standing precedent. To avoid difficulties of proof and to provide
guidance to officers conducting interrogations, this is an objective inquiry. Davis, 512 U.S. at 458-59. Invocation of the Miranda right to counsel "requires, at a minimum, some statement that can
reasonably be construed to be an expression of a desire for the assistance of an attorney." McNeil
v. Wisconsin, 501 U.S. 171, 178 (1991). The Supreme Court in Miranda held that if a defendant
indicates "in any manner" that he wishes an attorney before speaking or that he does not wish to be
interrogated further, questioning must cease. 384 U.S. at 444-45. Although a suspect must
"articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in
the circumstances would understand the statement to be a request for an attorney," Davis, 512 U.S.
at 459, he need not speak with the level of clarity or "discrimination of an Oxford don." Id.
(Souter, J., concurring). Whether viewed as in invocation of his right to remain silent or to invoke
his right to counsel, we agree with the district court that appellant adequately communicated his
desire to speak to an attorney before giving a statement that could be used against him. That the
officers recognized this is clear from their retort "You don't want to talk to us?" and their return,
after questioning, to clarify Gobert's intent.

We hold that Gobert's statement, made immediately after he was advised of his rights
under Miranda and article 38.22, that "I don't want to give up any right, though, if I don't got no
lawyer" was a clear invocation of the right to counsel. Under Edwards, all interrogation should have
ceased until counsel was provided. Because the interrogation continued in violation of Edwards,
Gobert's statements to the police are inadmissible against him on the trial of any criminal case. 
Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005).

The district court's order granting Gobert's motion to suppress is affirmed.



 __________________________________________

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear;

 Dissenting Opinion by Justice Puryear


Affirmed


Filed: April 19, 2007


Publish
1. After Gobert had confessed to the killing and the interrogation was winding down, Burgh asked
if Gobert would be willing to sign a written statement. Gobert became agitated and said, "I'm telling
you that I done it, man. Why you have to type up a statement and all of that?" He later added, "Oh,
man, I mean why we have to go back through all this, you know, this is just like what to present to
the judge or something, to the D.A., make your job easier or something?"