# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

═══════════════════════════════

## OPINION ON RECONSIDERATION ON
## PETITION FOR DISCRETIONARY REVIEW

═══════════════════════════════

## NO. 03-06-00330-CR

**The State of Texas, Appellant**

**v.**

**Milton Dwayne Gobert, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT**
**NO. D1DC06-904006, HONORABLE BOB PERKINS, JUDGE PRESIDING**

## O P I N I O N

The State appeals the district court's order granting appellee Milton Dwayne Gobert's motion to suppress statements. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West 2006). At issue is the admissibility of Gobert's videotaped custodial interrogation by Austin police officers. The trial court determined that the officers conducting the interrogation failed to honor Gobert's invocation of the right to counsel. In our original opinion, we affirmed the court's order. Upon reconsideration pursuant to rule 50, however, we now conclude that the district court erred by granting the motion to suppress. *See* Tex. R. App. P. 50.

To effectuate the Fifth Amendment privilege against self-incrimination, a suspect has the right to consult with an attorney and to have counsel present during custodial interrogation, and the police must explain this right to the suspect before questioning begins. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). When a suspect asserts his right to counsel, all interrogation must cease until counsel is provided or until the suspect personally reinitiates the conversation. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1980); *Dinkins v. State*, 894 S.W.2d 330, 350 (Tex. Crim. App. 1995). The suspect's request for counsel must be unambiguous, that is, he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. *Davis v. United States*, 512 U.S. 452, 459 (1994). If the suspect makes an ambiguous or equivocal reference to an attorney that a reasonable officer in the circumstances would have understood only as possibly invoking the right to counsel, questioning need not cease. *Id*. Although it may be good police practice for interviewing officers to clarify a suspect's ambiguous statement regarding counsel, both to protect the rights of the suspect and to minimize the chance of a confession being suppressed due to subsequent judicial second-guessing as to the meaning of the suspect's statement, clarifying questions are not required, and the officers have no obligation to stop questioning. *Id*. at 461; *Dinkins*, 894 S.W.2d at 351-52.

The relevant facts are not in dispute. Gobert, who was suspected of committing the murder for which he now stands indicted, was arrested for a parole violation and for the assault of a woman named Christine or Christina. Following his arrest, Gobert was questioned by Austin detectives Burgh and Scanlon. Burgh began the interview by advising Gobert of his constitutional and statutory rights. *See Miranda*, 384 U.S. at 479; Tex. Code Crim. Proc. Ann. art. 38.22, §§ 2, 3 (West 2005). Asked if he understood his rights, Gobert replied that he did and then said, "I don't

2

want to give up any right, though, if I don't got no lawyer." Scanlon immediately asked, "You don't want to talk?" The question was repeated by Burgh, "You don't want to talk to us?" Gobert answered, "I mean, I'll talk to y'all. I mean, I know, you know, what she had said about it, you know. I'll speak with y'all, but (inaudible), man. I mean, I'll speak with y'all, you know." Scanlon then said, "Okay, signing this—signing this is not giving up your right. Signing this is acknowledging that this was read to you." He then added, "Okay? Your choice to talk to us is different. This—all this is, is acknowledging that you were warned."

Burgh then began to question Gobert regarding his relationship with Christina. After a number of questions were asked and answered, Scanlon interrupted to ask, "I want to clear something up, though, because earlier you said you don't want to give up your right to a lawyer. I want you—I want you—I want to clear up the fact that you want to talk to us about this. Okay? You understand what I'm saying?" Gobert answered, "Yeah." Scanlon continued, "I want to clear it up. I mean, that's—that's what you want to do, right?" Gobert again answered, "Yeah." The interrogation continued for several hours and ultimately resulted in appellant confessing to the murder of Mel Kernena Cotton.

At issue is Gobert's statement, "I don't want to give up any right, though, if I don't got no lawyer." The trial court concluded that this was an unequivocal invocation of the right to counsel during questioning. The court orally announced its findings and conclusions in the reporter's record:

> I just don't find anything that is unequivocal [sic] about the statement "I'm not going to waive any rights if I don't got no lawyer." I mean, I think that that's as unequivocal as I can imagine a statement being.

3

I mean, if I were a defense lawyer and I was advising my client what to say, I can't imagine what advice I'd give him to say anything better than that. I mean, he's saying that he's not going to waive any rights until he has a lawyer. Under *Edwards*, once he makes that statement, he's got a right to a lawyer before anything else happens, you know.

I just—you know, and he was not provided a lawyer. They just—as soon as he says that, instead of saying, okay, you want a lawyer, we will get you a lawyer, or instead of—instead of asking him about the lawyer question, they just go totally around that and they start saying, well, you don't want to talk to us, which is not really what he had asked.

The right that he asked to invoke was his right to a lawyer, and he says at the same time he doesn't want to waive any rights until he's got one. I think the fact that they totally ignored what he said and kept on talking to him about does he want to make a statement, I think that that implies . . . they really don't believe in the warnings they have given him . . . .

. . . .

And that's what he's saying, is he doesn't want to give up any right. He doesn't want to give up his right to remain silent; he doesn't want to give up his right to have a lawyer appointed for him; he doesn't want to give up his right to terminate the interview. You know, that's what he says. I assume that that's what he means.

Now, the thing is, at that time what he says, "if I don't got no lawyer," maybe they might have some question at that point about whether he wanted a lawyer from that. I don't know how they could have that question.

But if they were going to ask any question, at that point, it seems to me, it was incumbent upon them to ask, okay, so you're saying you want a lawyer right now? Is that what you're saying? They want him to repeat his assertion that he wanted a lawyer, and then they could proceed along that line. But they don't ask that. They totally blow by the question of the lawyer deal.

. . . .

Well, either *Edwards* means what it says or it doesn't. Either you can invoke your right to a lawyer or you can't. I don't know what he can say to them that invokes his right to a lawyer any more than this. He says he doesn't want to waive any rights unless he's got a lawyer, and at that time, it seems to me, under *Edwards*, they have got to respect that right . . . . Under *Edwards*, it seems to me that once he says, I want a lawyer, that's it. I mean, that's the end of the ball game.

4

Because the issue is a mixed question of law and fact, we conduct a de novo review. *See Maestas v. State*, 987 S.W.2d 59, 62 (Tex. Crim. App. 1999); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

There are no magic words needed to invoke the right to counsel under *Miranda*, but the words used must communicate that the suspect desires to speak to someone who is an attorney. *Dinkins*, 894 S.W.2d at 352. If a suspect makes an equivocal or ambiguous statement, there is no requirement that officers attempt to clarify the statement, and the officers may continue their questioning. *Davis*, 512 U.S. at 459, 461; *see also Moran v. Burbine*, 475 U.S. 412, 434 n.4 (1986) (unless suspect communicates that he wants attorney, interrogation can continue).

Although the question presented is a close one, we conclude that Gobert's statement that "I don't want to give up any right, though, if I don't got no lawyer" was not an invocation of his right to an attorney. It is unclear what Gobert was trying to convey when he made the statement, but it is clear that the statement is not an unequivocal request for counsel. Gobert's statement may have clearly conveyed the idea that he did not have a present intent to "give up any right," but it was not a request for counsel so as to halt further interrogation by the officers. The word "lawyer" appeared in the statement, but not in any manner that could reasonably be interpreted as expressing a desire for the assistance of counsel or to speak to an attorney. At the very most, Gobert's statement to the officers was an equivocal and ambiguous statement that Gobert *might* want to invoke his right to counsel. *See Robinson*, 851 S.W.2d at 223-24 (question "Do I need to talk to a lawyer before I sign?" was equivocal at best); *Harper v. State*, No. 03-00-00677-CR, 2001 Tex. App. LEXIS 7497, at *4, 19 (Tex. App.—Austin Nov. 8, 2001, pet. ref'd) (not designated for publication) (concluding

5

that statement "I don't even want to talk unless I have me a lawyer and go through this shit. I don't have to go through this shit, right?" was ambiguous and equivocal and did not invoke right to counsel). Moreover, after being read his *Miranda* rights and immediately after making the statement in question, Gobert told the police three times that he was willing to talk to the police, indicating that he was willing to proceed without having the assistance of counsel. *Dinkins*, 894 S.W.2d at 351 (courts may consider totality of circumstances surrounding interrogation when determining whether individual invoked his right to counsel). The officers, by immediately seeking to clarify the meaning of Gobert's statement, did all that we should expect them to do.

The opinions and judgment dated April 19, 2007, are withdrawn. The district court's order granting Gobert's motion to suppress is overruled and the cause is remanded for further proceedings consistent with this opinion.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear;
     Justice Patterson dissents

Reversed and Remanded

Filed: October 4, 2007

Publish

6