Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
TOMAS URIAS,                                              )                  No. 08-01-00355-CR
)
                                    Appellant,                        )                  Appeal from
)
v.                                                                          )                  358th District Court
)
THE STATE OF TEXAS,                                   )                  of Ector County, Texas
)
                                    Appellee.                          )                  (TC# D-28,524)


O P I N I O N

            Tomas Urias appeals his murder conviction. A jury found Appellant guilty and assessed
punishment at imprisonment for a term of forty-eight years. On original submission, we found that
the trial court abused its discretion in refusing to suppress a confession, reversed the judgment of the
trial court, and remanded the cause for a new trial. Urias v. State, 104 S.W.3d 578 (Tex.App.--El
Paso 2003). The Court of Criminal Appeals granted the State’s petition for discretionary review and
remanded the cause with instructions that we reconsider the issue after requiring the trial court make
the written findings required by Article 38.22, § 6 of the Code of Criminal Procedure. Urias v. State,
155 S.W.3d 141 (Tex.Crim.App. 2004). The trial court’s findings and the parties’ briefs following
remand have been filed. Having reconsidered the suppression issue in light of the trial court’s
findings, we withdraw our prior opinion and affirm the judgment of the trial court.
 

FACTUAL SUMMARY
            On September 2, 1996, investigators with the Ector County Sheriff’s Office discovered a
human body wrapped in a piece of carpeting. The victim, Adrian Arenivas, had been murdered by
a close-range gunshot to the head and the body had been dumped in an open field in Ector County. 
Arenivas, who worked at a restaurant in Midland, had last been seen alive at the restaurant on the
evening of August 27 and he did not report for work the following day. His black Jeep was also
missing. On approximately September 6, the Jeep was found in Ojinaja, Mexico. Lieutenant Roddy
Eaton of the Ector County Sheriff’s Office went to Ojinaja and returned the vehicle to Odessa. 
During the course of the investigation in Mexico, Eaton and Carl Rogers, an investigator with the
Ector County Sheriff’s Office, determined that Billy Campbell and Appellant were suspects in the
Arenivas murder. They later found Campbell but Appellant’s whereabouts were unknown as he had
fled to Mexico. 
            Appellant was arrested in April of 2000 in Ector County on a possession of marihuana
charge, and an attorney, Jason Leach, was appointed to represent him. Leach did not represent
Appellant in connection with the murder. Shortly after Leach was appointed, Sergeant Investigator
Mario Tinajero of the Texas Department of Public Safety Narcotics Services contacted Leach and
told him that he wanted to talk with Appellant about matters unrelated to his possession case. Leach
knew that Appellant had previously provided information to Tinajero when jailed on another drug
charge in June of 1996. After Leach verified with the prosecutor that favorable information provided
by Appellant would be taken into consideration, he spoke with Appellant and Tinajero about
Appellant providing information. Leach told Tinajero that he wanted to be present “the next time”
Tinajero interviewed Appellant. 
            According to Tinajero, Appellant was calling him on a daily basis and talking about
providing information in order to work off his marihuana case. While at the jail on May 10, 2000,
Tinajero ran into Rogers and mentioned that he was there to interview Appellant. Rogers recognized
Appellant’s name and told him that he had been looking for him and wanted to talk to him about a
homicide investigation. Tinajero, who was previously unaware that Appellant was a murder suspect,
did not tell Rogers that Appellant had an attorney or that the attorney had requested that he be
present during any interviews. 
            Rogers and Tinajero met with Appellant the following morning in the Sheriff’s Office, but
Tinajero did not call Leach. Tinajero initially talked to Appellant for about thirty minutes and
obtained information about a counterfeit money operation in Albuquerque and other drug related
information. Following Tinajero’s interview, Rogers talked to Appellant about the Arenivas murder 
At the beginning of the interview, Rogers advised Appellant of his Miranda


 rights and Appellant
waived those rights. Rogers told Appellant that he was investigating a homicide that occurred in
August 1996 and he showed Appellant a picture of Arenivas. After questioning Appellant for
approximately twenty-five minutes, Rogers began recording the interview. He read Appellant his
Miranda rights and Appellant said that he understood his rights. When Rogers asked Appellant if
he wished to waive his rights and talk about the homicide investigation, Appellant stated that he
wanted to stop the interview. Rogers turned off the tape recorder. 
            Both Tinajero and Rogers recalled that Appellant said he wanted to think about whether to
proceed and Rogers gave him some time to do so. Appellant requested a Coke and Tinajero left the
room to get it for him. Rogers remained in the room with Appellant, but he did not ask Appellant
any questions. Likewise, Tinajero did not question Appellant after he asked that the interview be
stopped. After a few minutes, Appellant told Rogers that he wanted to resume the interview. Rogers
turned on the audiotape approximately eight minutes after stopping, and the interview continued. 
Rogers asked whether Appellant wanted him to read the Miranda rights again but Appellant stated
that he did not. Appellant proceeded to tell Rogers that he had killed Arenivas in order to take his
new black Jeep and sell it for money to pay off a drug-related debt to Gardea. Campbell, who
worked for Gardea, was present that evening and participated in the murder, disposal of the body,
and transportation of the Jeep to Mexico. 
            Tinajero called Rogers approximately an hour after the interview had concluded and told him
for the first time that Appellant had an attorney and he had previously asked to be present during any
interviews.


 He told Rogers that he would call Leach and tell him that they had interviewed
Appellant. Tinajero called Leach and apologized for not calling him prior to the interview. Tinajero
also talked to Leach on the following day and told him that Rogers had interviewed Appellant. 
Tinajero advised Leach that Appellant “had some other problems,” and Leach asked him, “What
about a homicide?” Tinajero replied affirmatively and told him that Appellant was a suspect. Even
after Appellant confessed to the homicide, he continued to call Tinajero and offered to provide
information in exchange for favorable treatment on his cases. Tinajero understood that Appellant
wanted to “work off” the homicide by providing information but he told him that he could not help
him on that case. Tinajero and an FBI agent subsequently met with Appellant and Leach. During
this meeting, Appellant provided information about drugs and gun running in New Mexico. During
a break, Leach spoke to Appellant and learned that he had confessed to the homicide. At that point,
Leach told Appellant not to talk to the law enforcement officers anymore. 
            Appellant testified at the suppression hearing that he had previously cooperated with the
authorities after being arrested on a “big marihuana charge.” In exchange for his cooperation, a five
year sentence was reduced to time served. It was during this experience that he met Tinajero and he
contacted Tinajero after being arrested on the new marihuana charge in 2000. During the interview
with Rogers about the homicide, Appellant asked that the interview be terminated and Rogers turned
off the tape recorder. After sitting quietly for about a minute, Appellant asked for something to drink
and Tinajero went to get him a Coke. After Tinajero returned, Rogers told Appellant that
“everything was going to be okay if I would help him out . . . in this case, the murder case.” At trial,
Appellant testified that Rogers stated, “Tomas, it is okay. Whatever your position is, it is okay. If
you are willing to cooperate with me, I can do the same thing with you. Whatever you want to do.” 
He characterized their comments as not “telling [him] exactly to talk but they were telling me that
it was okay for me to help them out, to cooperate.” After taking a few sips of the Coke, Appellant
told them that he was willing to cooperate with them in the investigation of the murder. During
cross-examination at the suppression hearing, Appellant specifically testified that he voluntarily
completed his statement to Rogers. 
            Appellant filed a motion to suppress the confession on the ground that Rogers interviewed
Appellant in the absence of his attorney or without first obtaining Leach’s permission. He
additionally argued at the suppression hearing that his right to remain silent was not scrupulously
honored after he requested that the interview be terminated. The trial court overruled the objections
and found the audiotaped confession admissible. In its written findings of fact and conclusions of
law, the trial court found that:
1. Appellant was in jail on a drug charge when police questioned him on the murder
charge.
 
2. Appellant was represented on the drug case by Jason Leach who advised Tinajero
that he wanted to be present when officers interviewed Appellant.

            3. Tinajero and Rogers interviewed Appellant without contacting Leach.
 
4. Tinajero interviewed Appellant about the drug case for about thirty minutes but
did not record the conversation.
 
5. Rogers took over the interview and interviewed Appellant in connection with the
murder case for about twenty-five minutes before recording the conversation.
 
6. Rogers read Appellant his Miranda rights at the beginning of the recorded
statement and Appellant stated he understood those rights. Rogers advised Appellant
he could stop the interview at any time and Appellant stated that he wished to stop
the interview.
 
7. The tape recorder was turned off for about eight minutes and then turned back on.
 
8. During the second taping sequence, Appellant stated that he did not need his
rights read to him again and he then made a recorded confession to the murder. 

The trial court went on to conclude that Appellant’s Sixth Amendment right to counsel was not
violated because Appellant had not been charged with the Arenivas murder at the time of the
interview and the Sixth Amendment right to counsel does not extend to unrelated, uncharged
offenses. The court also found that Appellant’s Fifth Amendment right against self-incrimination
was not violated because the officers ceased interrogation at Appellant’s request and in a manner
sufficient to indicate that the officers respected the request. The trial court additionally concluded
that Appellant’s confession was voluntary. With regard to the issue of whether Appellant was
promised anything in exchange for his statement, the trial court specifically gave weight to the
officers’ testimony as more credible and it disregarded Appellant’s testimony that Rogers promised
to help him if he talked about the murder. 
VOLUNTARINESS OF CONFESSION
            In his sole point of error, Appellant contends that his confession should have been suppressed
because it was obtained in violation of his right to remain silent as guaranteed by the Fifth
Amendment and Miranda because Rogers and Tinajero did not scrupulously honor Appellant’s
invocation of his right to remain silent.
Standard of Review
            We review a trial court’s ruling on a motion to suppress using the bifurcated standard
articulated in Guzman v. State, 955 S.W.2d 85 (Tex.Crim.App. 1997). See Carmouche v. State, 10 
S.W.3d 323, 327 (Tex.Crim.App. 2000); Krug v. State, 86 S.W.3d 764, 765 (Tex.App.--El Paso
2002, pet. ref’d). We do not engage in our own factual review because at a suppression hearing, the
trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be
given to their testimony. See State v. Ross, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000); Romero v.
State, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). We give almost total deference to the trial
court’s ruling on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn
on an evaluation of credibility and demeanor. Johnson v. State, 68 S.W.3d 644, 652-53
(Tex.Crim.App. 2002); Best v. State, 118 S.W.3d 857, 861-62 (Tex.App.--Fort Worth 2003, no pet.).
We review de novo a trial court’s rulings on mixed questions of law and fact if they do not turn on
the credibility and demeanor of witnesses. Johnson, 68 S.W.3d at 652-53. If the trial court’s ruling
on the admissibility of a custodial statement turns on an evaluation of credibility and demeanor, we
are not at liberty to disturb any finding which is supported by the record. See Dewberry v. State, 4
S.W.3d 735, 747-48 (Tex.Crim.App. 1999). Ordinarily, we consider only the evidence adduced at
the suppression hearing. Rachal v. State, 917 S.W.2d 799, 809 (Tex.Crim.App. 1996). But where,
as here, the suppression issue has been consensually relitigated at trial, we review the entire record,
to determine whether the confession was voluntary. See id.
Whether Appellant’s Invocation
of Right to Remain Silent
Was Scrupulous Honored

            Prior to custodial interrogation, a suspect must be advised that he has a right to remain silent. 
Miranda, 384 U.S. at 467-68, 86 S.Ct. at 1624-25. If the individual indicates in any manner, at any
time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. Id.,
384 U.S. at 473-74, 86 S.Ct. at 1626-27, 16 L.Ed.2d at 723; Mayes v. State, 8 S.W.3d 354, 358
(Tex.App.--Amarillo 1999, no pet.). If a statement is governed by Miranda (i.e. the suspect is in
custody), then a failure to cut off questioning after a suspect invokes his right to remain silent
violates his rights and renders any subsequently obtained statements inadmissible. Michigan v.
Mosley, 423 U.S. 96, 113, 96 S.Ct. 321, 331, 46 L.Ed.2d 313 (1975); Sterling v. State, 830 S.W.2d
114, 116 (Tex.Crim.App. 1992); Dowthitt v. State, 931 S.W.2d 244, 257 (Tex.Crim.App. 1996).             If the invocation is unambiguous, a law enforcement officer may not continue to question the
suspect for the purpose of persuading him to change his mind and talk. Hearne v. State, 534 S.W.2d
703, 705 (Tex.Crim.App. 1976); Dowthitt, 931 S.W.2d at 257. On the other hand, following the
Miranda language to its logical conclusion would produce the absurd result that no confession or
inculpatory statement would ever be admissible--even if the accused changed his mind and wanted
to speak with police after invoking the right to remain silent. Maestas v. State, 987 S.W.2d 59, 61
(Tex.Crim.App. 1999). Miranda did not create a per se proscription of indefinite duration upon any
further questioning once the person in custody has indicated a right to remain silent. Mosley, 423
U.S. at 102-03, 96 S.Ct. at 326. The admissibility of statements obtained after the person in custody
has decided to remain silent depends under Miranda on whether his “right to cut off questioning”
was “scrupulously honored.” Maestas, 987 S.W.2d at 61-62, quoting Mosley, 423 U.S. at 104, 96
S.Ct. at 326. In Mosley, the Supreme Court found the following factors important to this analysis: 
(1) whether the suspect was informed of his right to remain silent prior to the initial questioning; 
(2) whether the suspect was informed of his right to remain silent prior to the subsequent
questioning; (3) the length of time between initial questioning and subsequent questioning; (4)
whether the subsequent questioning focused on a different crime; and (5) whether police honored
the suspect’s initial invocation of the right to remain silent. Maestas, 987 S.W.2d at 62. Thus
Mosley created an ad hoc test in which courts must evaluate the facts of each case to determine if
the resumption of police interrogation was consistent with scrupulous observance of the right to cut
off questioning. Maestas, 987 S.W.3d at 62. We keep in mind that whether a resumption of
questioning is consistent with “scrupulously honoring” the right to remain silent depends on the
unique facts and circumstances of each case. Maestas, 987 S.W.2d at 63.
            Appellant argues that we must subject the issue presented on appeal to a de novo review. We
disagree. Appellant’s version of what occurred during the eight minute lapse differs from that of
Rogers and Tinajero and it is from these disputed facts that the trial court determined that the officers
scrupulously honored Appellant’s invocation of his right to remain silent. Consequently, we must
engage in the deferential review described in Guzman.
            Appellant also asserts that once he invoked his right to remain silent, the officers were not
only required to cease interrogation but they were also required to immediately leave Appellant’s
presence and could not return to question him until “another day.” He does not cite any authority
directly in support of this proposition. Further, the argument disregards the officers’ testimony,
which the trial court believed, that Appellant told the officers he wanted to think about whether to
continue talking to them. The correct analysis of the issue is the one set forth in Mosley.
            It is undisputed that Appellant was advised of his Miranda rights both prior to the initial
questioning and the subsequent questioning. The first two factors weigh in favor of finding the
officers scrupulously honored Appellant’s right to remain silent. With regard to the third factor,
there is only a lapse of eight minutes between the initial and subsequent questioning. However, the
trial court found that all interrogation ceased, and the interrogation did not begin again until
Appellant advised the officers that he wanted to continue. The record supports the trial court’s
findings in this regard. The trial court gave particular weight to Appellant’s testimony that the
officers stopped asking him questions after he invoked his right to remain silent. While only a short
period of time passed after Appellant invoked his right to remain silent, it was Appellant and not the
officers who initiated the conversation. Thus, we find that the third factor also weighs in favor of
finding the statement admissible. The subsequent questioning did not focus on a different crime;
therefore, the fourth factor does not favor admissibility. Finally, the record supports a conclusion
that the officers honored Appellant’s invocation of his right to remain silent. As we have already
stated, the trial court found that all interrogation ceased and it continued only after Appellant advised
the officers that he wanted to continue. After invoking his right to remain silent, Appellant indicated
to Rogers that he wanted to think about whether to proceed. This portion of the conversation is not
on the tape but it is within the trial court’s discretion as the factfinder to give the officers’ testimony
credence. Rogers allowed Appellant some time to think and Tinajero left the room to get Appellant
something to drink. Even Appellant admitted that the officers allowed him to sit quietly for a period
of time. The trial court did not believe Appellant’s testimony that Rogers told him that “everything
would be okay” if he talked about the homicide. Instead, the trial court found the officers’ testimony
that they did not make any representations to Appellant to be more credible. For these reasons, we
conclude that the fifth factor also weighs in favor of finding that the officers scrupulously honored
Appellant’s exercise of his right to remain silent.
            Because the record supports the trial court’s findings and the court correctly applied the law
to those facts, we find no abuse of discretion in the trial court’s denial of Appellant’s motion to
suppress. We overrule Point of Error One and affirm the judgment of the trial court.
 
August 31, 2006                                                          
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)