# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-06-00330-CR

**The State of Texas, Appellant**

**v.**

**Milton Dwayne Gobert, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. D1DC06-904006, HONORABLE BOB PERKINS, JUDGE PRESIDING

## O P I N I O N

Our opinion and judgment issued on October 4, 2007, are withdrawn, and the following opinion is substituted.

The State appeals the district court's order granting appellee Milton Dwayne Gobert's motion to suppress statements. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West 2006). At issue is the admissibility of Gobert's videotaped custodial interrogation by Austin police officers. The trial court determined that the officers conducting the interrogation failed to honor Gobert's invocation of the right to counsel. We conclude that the district court erred by granting the motion to suppress.

The relevant facts are not in dispute. Gobert, who was suspected of committing the murder for which he now stands indicted, was arrested for a parole violation and for the assault of a woman named Christine or Christina. Following his arrest, Gobert was questioned by Austin detectives Burgh and Scanlon. Burgh began the interview by advising Gobert of his constitutional and statutory rights. *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966); Tex. Code Crim. Proc. Ann. art. 38.22, §§ 2, 3 (West 2005). Asked if he understood his rights, Gobert replied that he did and then said, "I don't want to give up any right, though, if I don't got no lawyer." Scanlon immediately asked, "You don't want to talk?" The question was repeated by Burgh, "You don't want to talk to us?" Gobert answered, "I mean, I'll talk to y'all. I mean, I know, you know, what she had said about it, you know. I'll speak with y'all, but (inaudible), man. I mean, I'll speak with y'all, you know." Scanlon then said, "Okay, signing this—signing this is not giving up your right. Signing this is acknowledging that this was read to you." He then added, "Okay? Your choice to talk to us is different. This—all this is, is acknowledging that you were warned."

Burgh then began to question Gobert regarding his relationship with Christina. After a number of questions were asked and answered, Scanlon interrupted to ask, "I want to clear something up, though, because earlier you said you don't want to give up your right to a lawyer. I want you—I want you—I want to clear up the fact that you want to talk to us about this. Okay? You understand what I'm saying?" Gobert answered, "Yeah." Scanlon continued, "I want to clear it up. I mean, that's—that's what you want to do, right?" Gobert again answered, "Yeah." The interrogation continued for several hours and ultimately resulted in appellant confessing to the murder of Mel Kernena Cotton.

At issue is Gobert's statement, "I don't want to give up any right, though, if I don't got no lawyer." The trial court concluded that this was an unequivocal invocation of the right to counsel during questioning.

Because the issue presented is a mixed question of law and fact, we conduct a de novo review. *See Maestas v. State*, 987 S.W.2d 59, 62 (Tex. Crim. App. 1999); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). To effectuate the Fifth Amendment privilege against self-incrimination, a suspect has the right to consult with an attorney and to have counsel present during custodial interrogation, and the police must explain this right to the suspect before questioning begins. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). When a suspect asserts his right to counsel, all interrogation must cease until counsel is provided or until the suspect personally reinitiates the conversation. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1980); *Dinkins v. State*, 894 S.W.2d 330, 350 (Tex. Crim. App. 1995). The suspect's request for counsel must be unambiguous, that is, he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. *Davis v. United States*, 512 U.S. 452, 459 (1994). If the suspect makes an ambiguous or equivocal reference to an attorney that a reasonable officer in the circumstances would have understood only as possibly invoking the right to counsel, questioning need not cease. *Id*. To invoke the right to counsel, a "suspect must *unambiguously* request counsel." *Davis v. United States*, 512 U.S. 452, 459 (1994) (emphasis added); *see Dinkins v. State*, 894 S.W.2d 330, 351 (Tex. Crim. App. 1995) (invocation must be clear and unambiguous); *see also Smith v. Illinois*, 469 U.S. 91, 97-98 (statement is either invocation of right to counsel or it is not). At a minimum,

the suspect must make a statement that could reasonably be interpreted as "an *expression of a desire* for the assistance of an attorney." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991) (emphasis added). The invocation must be clear enough that a reasonable officer "in the circumstances would understand the statement to be a *request for an attorney*." *Davis*, 512 U.S. at 459 (emphasis added). In other words, a suspect does not invoke his right to an attorney if he merely mentions the word "attorney" or makes an equivocal statement that, in light of the circumstances, would have lead a reasonable officer to believe "only that the suspect *might* be invoking the right to counsel." *Id.*; *see Dinkins*, 894 S.W.2d at 351; *Robinson v. State*, 851 S.W.2d 216, 223 (Tex. Crim. App. 1991). There are no magic words needed to invoke the right, but the words must communicate that the suspect desires to speak to someone who is an attorney. *Dinkins*, 894 S.W.2d at 352. If a suspect makes an equivocal or ambiguous statement, there is no requirement that officers attempt to clarify the statement, and the officers may continue their questioning. *Davis*, 512 U.S. at 459, 461; *see also Moran v. Burbine*, 475 U.S. 412, 434 n.4 (1986) (unless suspect communicates that he wants attorney, interrogation can continue). Although it may be good police practice for interviewing officers to clarify a suspect's ambiguous statement regarding counsel, both to protect the rights of the suspect and to minimize the chance of a confession being suppressed due to subsequent judicial second-guessing as to the meaning of the suspect's statement, clarifying questions are not required, and the officers have no obligation to stop questioning. *Davis*, 512 U.S. at 461; *Dinkins*, 894 S.W.2d at 351-52.

We conclude that Gobert's statement that "I don't want to give up any right, though, if I don't got no lawyer" was not an invocation of his right to an attorney. It is unclear what Gobert

4

was trying to convey when he made the statement, but it is clear that the statement is not an unequivocal request for counsel. Gobert's statement may have clearly conveyed the idea that he did not have a present intent to "give up any right," but it was not a request for counsel so as to halt further interrogation by the officers. The word "lawyer" appeared in the statement, but not in any manner that could reasonably be interpreted as expressing a desire for the assistance of counsel or to speak to an attorney. *See Davis*, 512 U.S. at 459 (declining invitation to extend holding in *Edwards* and "require law enforcement officers to cease questioning immediately upon the making of an ambiguous or equivocal reference to an attorney"). At the very most, Gobert's statement to the officers was an equivocal and ambiguous statement that Gobert *might* want to invoke his right to counsel. *See Robinson*, 851 S.W.2d at 223-24 (question "Do I need to talk to a lawyer before I sign?" was equivocal at best); *Harper v. State*, No. 03-00-00677-CR, 2001 Tex. App. LEXIS 7497, at *4, 19 (Tex. App.—Austin Nov. 8, 2001, pet. ref'd) (not designated for publication) (concluding that statement "I don't even want to talk unless I have me a lawyer and go through this shit. I don't have to go through this shit, right?" was ambiguous and equivocal and did not invoke right to counsel). Moreover, after being read his *Miranda* rights and immediately after making the statement in question, Gobert told the police three times that he was willing to talk to the police, indicating that he was willing to proceed without having the assistance of counsel. *Dinkins*, 894 S.W.2d at 351 (courts may consider totality of circumstances surrounding interrogation when determining whether individual invoked his right to counsel). Although they were not required to do so, the officers engaged in the "good police practice" spoken of in *Davis* by immediately seeking to clarify the meaning of Gobert's statement.

5

The district court's order granting Gobert's motion to suppress is overruled and the cause is remanded for further proceedings consistent with this opinion.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear
      Dissenting Opinion by Justice Patterson

Reversed and Remanded on Motion for Rehearing

Filed:   February 1, 2008

Publish